Argued November 2, decided November 23, 1909.

## STRICKLAND v. COMMERCIAL MINING COMPANY.

[104 Pac. 965.]

MINES AND MINERALS—LOCATION—DECLARATORY STATEMENT—SUFFI-CIENCY.

1. A recorded declaration of the location of a placer claim described the property as 20 acres of placer ground in "this gulch," claiming 1,500 feet in length by 350 feet in width, and stated that the gulch emptied into a certain creek, and headed within a mile of a gulch that emptied into a certain basin. The evidence showed that the first gulch referred to headed at the same place as the gulch that emptied into the basin. *Held*, that the notice did not show the definite location of any claim, and was insufficient to support a location, whether it was necessary that it be recorded or not.

MINES AND MINERALS—CONFLICTING LOCATIONS—DEVELOPMENT—SUFFI-CIENCY.

2. When a quartz claim was located, search was made for conflicting boundaries, but no monuments were found except a stake outside the claim, without any marks on it, which appeared to have been lying there for a long time, and the only improvements indicated on the ground appeared to have been done many years before. The ground was, in fact, covered by a prior placer location, but the work done thereon before the subsequent locator procured his patent, consisted of 14 days' work of an hour each day; the water accumulated in a reservoir being exhausted in one hour in working the claim. *Held* that, where the appearance of a mining claim shows an abandonment of the premises for many years, and no monuments mark the boundaries, another location thereon may be made, on the assumption that all possessory rights have been relinquished, and the work done on the placer location was not sufficient to give notice of a valid possessory right in the claim as against subsequent locators.

MINES. AND MINERALS — LOCATION — CONFLICTING LOCATIONS — PRECE-
DENCE.

3. A quartz location, laid out over a prior quartz location, does not
initiate any right to a claim in so far as the boundaries of the two locations
conflict.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by George Strickland against the Commercial Mining Company, a corporation, to determine the right of possession of about six acres of mineral land in Baker County, Oregon. The amended complaint states in effect that on May 2, 1896, Miles Ratcliff, a qualified entryman, duly located the Summit, a placer mining claim; that since that time he and his grantees have continuously been in possession thereof, and complied with every legal requirement in relation thereto; that the plaintiff, by *mesne* conveyances, is the holder of the recorded title to that claim, and is in possession thereof; that about October 21, 1902, the defendant unlawfully entered upon a part of such claim and located the Rainbow, a quartz mining claim, the boundaries of which overlap those of the Summit; that about March 8, 1907, the defendant, having secured a survey of its claim, applied for a United States patent therefor, wrongfully asserting that it was in the possession of the whole of the Rainbow claim; that within the time prescribed the plaintiff filed in the local land office an adverse claim and instituted this suit.

For a second cause of suit it is averred that on October 27, 1905, the plaintiff was the owner and in possession of the Sunbeam, a quartz mining claim, which embraces practically the same premises as the Summit, both of which are overlapped by the Rainbow.

. The answer denied the material allegations of the complaint, and averred that on October 21, 1902, the site upon which the Summit claim is asserted to have been located was vacant public land, and that the defend-

ant's grantors, having discovered thereon a vein of mineral, located the Rainbow, setting forth the means adopted to perfect the selection, since which time such entrymen and defendant have been, and the latter now is, in the possession of the whole of the claim; that on October 27, 1905, all the ground covered by the Sunbeam was embraced in valid, subsisting quartz mining claims owned by the defendant; and that the pretended location of the Sunbeam is void.

The reply put in issue the allegations of new matter in the answer; and, the cause having been tried, the suit was dismissed, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. Charles E. Norton.*

For respondent there was a brief with an oral argument by *Mr. John L. Rand.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The evidence shows that a declaration was entered of record in Book F, p. 72, of Placer Locations of Baker County, May 6, 1896, of which the following is a copy:

"Notice is hereby given to whom it may concern, that I, the undersigned, citizen of the United States, over the age of twenty-one years, have this day located under the Revised Statutes of the United States, chapter six, title thirty-two, the following described placer mining ground, viz.: 20 acres of placer ground in this gulch, claiming 1,500 feet in length by 350 feet in width. This gulch empties into South Dixie Creek. . This gulch heads within a mile of the gulch that empties into Mormon Basin, situated in —— mining district, Baker County, Oregon. This claim shall be known as the 'Summit Placer Mining Claim,' and I intend to work the same in accordance with the local customs and rules of miners in said mining district. Dated on the ground this 2d day of May, 1896.

"Miles Ratcliff, Locator."

It further appears that when this notice was given, the land embraced within the Summit had been surveyed by the general government, but that the claim as now laid out, did not conform with the lines of the public survey, as required by act of Congress: Rev. St. U. S. § 2329 (U. S. Comp. St. 1901, p. 1432.) The reason assigned by the locator for departing from such direction is that prior locations of other claims, and the peculiar conformation of the ground, necessitated the location of the Summit in such a manner. The testimony of Ira L. Hoffman, a surveyor, who appeared as the defendant's witness, is to the effect that the boundaries of the Summit cannot be established, with any degree of certainty, from an inspection of the recorded notice. It also appears from testimony that "this gulch," referred to in the notice, and in which the Summit is located, heads at the same place as "the gulch that empties into Mormon Basin," so that a pebble would separate falling rain or melting snow, causing the water to flow in either gulch. An inspection of the recorded notice imparts no information to interested persons of the definite location of any claim.

The statute in force when the Summit was set off required the posting of a notice on the lode or vein of a quartz claim (2 Hill's Ann. Laws 1892, § 3828), but no provision was made for the locating of placer claims, or for the recording of notices thereof. Placer claims are subject to entry and patent under like circumstances and conditions, and upon similar proceedings as are provided for vein or lode claims (Rev. St. U. S. § 2329) ; that is, according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States (Rev. St. § 2319: U. S. Comp. St. 1901, p. 1424.) It is unnecessary to inquire whether or not the custom or rule of miners in the district where this claim lies required a notice of location to be recorded, for if such was essential,

the notice hereinbefore designated is insufficient, and if no record were necessary such notice was ineffectual, so that in either case the notice recorded could not initiate a right to the premises. Miles Ratcliff, the locator, as a witness for the plaintiff, testified that about May 2, 1896, he discovered gold on the land embraced in the Summit, whereupon he located that claim by pacing the ground 600 feet in width and 1,500 feet in length, and by posting notices on the premises, and that thereafter the required assessment work thereon was annually performed. His testimony is corroborated by that of his brother, John, who assisted in making the location, and who testified that stakes 4 or 5 inches through and about 5 feet high were set at the corners and at the ends of the claim.

2. In *Walton* v. *Wild Goose Mining & Trading Co.* 123 Fed. 209, 214 (60 C. C. A. 155, 160), the court in referring to a notice of the location of a placer claim, says: "If there was any clerical error as to the courses or distances, the rule is that such discrepancies are to be controlled by the monuments erected upon the ground, or references to other well-known objects or locations." Assuming, without deciding, that the act of setting stakes at the corners and at the end of the Summit inaugurated a possessory right thereto, we think that such right was not maintained by sufficient notoriety to be preserved by a decree, for the testimony shows that when the Rainbow was located, on search being made in the vicinity for conflicting boundaries, no monuments were found, except a stake outside the claim, which a witness said looked like it had been lying there 15 years, and it had no writing or marks thereon evidencing the location of any claim. When the Rainbow was laid out, the locators discovered that some improvements had been made on the ground where it is now asserted the Summit was established, but all the work thereon appeared to have been done many years prior thereto; one witness saying that it seemed as

if such labor had been performed in the year 1862. As illustrating the work done on the Summit in 1905, Charles Strasak, as a witness for the plaintiff, testified on cross-examination that he and another man jointly worked on the claim about an hour a day for 14 days, saying, "of course we were putting in our time." These men were using water in mining, and in one hour all that had accumulated in a reservoir was exhausted. It can be seen that labor of the kind indicated would not make a very lasting impression on the premises, or serve to notify interested parties that a valid, subsisting possessory right was asserted thereto. We do not mean to be understood as holding that the failure of a person to find stakes on a placer claim would justify another location embracing the whole or a part of the premises, for it might be that such monuments had been purposely destroyed by some person who desired to locate another claim thereon. Where, however, the appearance of a mining claim unmistakably indicates an abandonment of the premises for many years, and no stakes or other monuments mark the boundaries, such evidence warrants the assumption that all possessory right thereto has been relinquished, and authorizes another location thereon.

3. The plaintiff, on October 27, 1905, located the Sunbeam, a quartz mining claim, the boundaries of which are almost identical with the exterior lines of the Summit, but as the former claim was not laid out until after the Rainbow, also a quartz claim, was located, no right thereto, so far as the boundaries thereof conflict, can be initiated by the attempted relocation. Lindley, Mines, (2 ed.) § 413.

Believing that no error was committed in dismissing the suit, the decree is affirmed.          Affirmed.