## Swango v. Kentucky Coal & Timber Development Company.

(Decided October 19, 1923.)

### Appeal from Breathitt Circuit Court.

1. Vendor and Purchaser—Innocent Purchaser, Where Vendee Fails to Re-record Instrument Destroyed, Protected.—Under Ky. Stats., sections 3998, 4000, relating to destruction of records, where there

is a failure of a vendee for a long and unreasonable time either to re-record his deed, if it is in his possession, or to have the same supplied in the manner pointed out by statute, an intervening innocent purchaser will not be disturbed.

2. Vendor and Purchaser—Conveyance of Only Right, Title, and Interest will Not Support Plea of Innocent Purchase.—A conveyance without warranty by the vendor, but which conveys the property described, is equivalent to an assertion of ownership by the vendor, and will therefore support a plea of bona fide purchase; but a conveyance only of the right, title, and interest of the vendor, carries with it to the vendee only such interest as the vendor has, and will not support a plea of innocent purchase.

3. Adverse Possession—Possession of Adjoining Tract Held Not Adverse.—The fact that one had actual possession of a nearby or adjoining tract of land did not give to him such possession of wild land as would ripen into a title by adverse possesson, though he authorized others to take certain poplar timber from it.

4. Records—Title Not Lost by Lapse of Time Before Re-recording Deed on Destruction of Records.—Under Ky. Stats., sections 3998, 4000, as to destruction of records, until there has been an intervening right, as by innocent purchase, the failure of the title holder to re-record his deed after destruction of records will not, by mere lapse of time, deprive him of title.

W. L. KASH for appellant.

HAZELRIGG & HAZELRIGG and GRANNIS BACH for appellee.

Opinion of the Court by Turner, Commissioner— Reversing.

In May, 1867, M. J. Amyx obtained from the Commonwealth a patent for 200 acres of land in Breathitt county. The land lies on the headwaters of some small branches of main Quicksand.

In June, 1868, Amyx sold and by general warranty deed conveyed the same to R. T. Smith, and Smith in August of that year had the same recorded in the county court clerk's office. In 1873 the courthouse of Breathitt county, including the county clerk's office, was destroyed by fire, as was the record of Smith's deed.

In the latter '70's or the earlier '80's M. J. Amyx died. When the land was patented it was wild, vacant, and unappropriated, and was not at the time occupied or in the possession of any one; in fact it has at all times remained practically in the same state, except that in the '90's some part of the more valuable poplar timber was taken therefrom.

Smith, the vendee of Amyx, was a resident of Montgomery county in this state, and although he appears to have been at all times in possession of the original deed which had been recorded, he never had the same re-recorded until the year 1911.

In 1903, some 30 years after the destruction of the record and some 20 years or more after the death of the patentee, M. J. Amyx, his heirs at law joined in a conveyance covering this patent to Fletcher, who is the predecessor in title of the appellee.

In 1912 Smith, after having his deed re-recorded, conveyed the same to appellant, Swango.

This is an action by appellant against the timber company for trespass to try title, and the trial court at the conclusion of the evidence directed the jury to find a verdict for the defendant, which was done. The plaintiff at the same time asked the court to direct the jury to find a verdict for him, which motion was overruled, and from a judgment on the directed verdict for the defendant the plaintiff has appealed.

The deed from the Amyx heirs was made to Fletcher, who was the agent and manager of appellee, and was admittedly made to him for the appellee, and will therefore be treated as a direct conveyance from the heirs to it.

"Section 3998, Ky. Stats., provides:

"When any record book of wills, deeds, and other instruments of writing, or any such instrument, shall be filed in any clerk's office, and shall be lost, destroyed, or become illegible, the clerk in whose office such book or paper was, upon the production to him of any original paper which was recorded in such book, or an attested copy from the record, or of anything else in said book, or of any paper so filed, shall, on the request of the person interested, record the same anew, and shall certify on the record whether it was recorded from the original or a copy, and how the same was authenticated; and such record shall be *prima facie* evidence."

Section 4000, Ky. Stats., provides:

"That when any deed, mortgage, or other instrument of writing, authorized by law to be recorded, has been so recorded, and the book containing the same has been lost, destroyed, mutilated, or defaced, and there is not in existence a copy of such writing known to the person claiming under the same, it shall be lawful for such person to institute a suit in equity in the county where such instru-

ment was recorded, against the grantors or obligors in such writing, or his heirs or personal representatives, setting forth the fact of the existence of such writing, and the destruction of the record, and, upon hearing, the court may render judgment that the defendants make and execute another writing in lieu thereof, of the same tenor and effect.''

It has been held by this court that where there is a failure of a vendee, for a long and unreasonable time, either to have re-recorded the instrument if it is in his possession, or have the same supplied in the manner pointed out by the statute, an intervening innocent purchaser will not be disturbed. In the case of Holton v. Alley, 15 R. 529, a mortgage was executed in 1875, and the records thereafter were destroyed. The mortgage was not restored in the manner prescribed by the statute, and after the destruction certain parties bought portions of the land without notice of the mortgage. Five years elapsed between the destruction and the institution of the action, and the court declined to disturb the innocent purcheser because of the negligence of the mortgagee in failing to restore the record, upon the theory that where a loss must fall on one of two innocent parties, it will be put on him whose negligence has made the loss possible.

In the case of Kentucky Coal & Timber Development Company v. Conley, 184 Ky. 274, the doctrine was reaffirmed, and the court in addition said: ''In such a case the alleged deed will be treated as if it had never been recorded.''

Under the doctrine of these opinions it is claimed by appellee here that between the destruction of the record in 1873 and the re-recording of the deed in 1911, it, by its purchase and conveyance from the Amyx heirs, became an innocent purchaser and is entitled to have the rule applied.

But whether defendant is in fact a purchaser for value without notice depends upon the instrument under which it claims. The conveyance of the Amyx heirs to Fletcher recites:

''The parties of the first part are the children and heirs at law of the said M. J. Amyx, and it is understood that they convey only such title in and to said land as described (descended) to them from their father, and only quitclaim their interest therein.''

In other words they expressly say they convey only such title as they may have acquired as the heirs at law of their deceased father, and no other. They do not assert or warrant that they were the title holders, or that their father was at his death. In substance they say, "We only convey to you such right, if any, as we inherited from our father."

At the time they were as descendants of his the record title holders, for after the destruction of the deed from the elder Amyx to Smith there was nothing on the record to show that Amyx had ever parted with the title which the patent gave him. They then being the record title holders, but expressly declining to convey by general warranty, and expressly saying in their deed they conveyed only such interest as they inherited from their father, was not their vendee thereby placed upon his inquiry as to the nature of the title held by the elder Amyx at his death? It seems fair to assume that even a cursory inquiry, prompted by this situation, would have disclosed to the vendee the fact that the elder Amyx had parted with the title during his lifetime, and possibly that the recordation of such conveyance had been destroyed in the courthouse fire.

But whether this be true or not, such a conveyance only of the right, title and interest of the vendor carries with it to the vendee only such interest as the vendor has, and will not support a plea of innocent purchase. The rule is based upon the sound doctrine that a vendor who will only convey what right, title and interest he has, is himself doubtful of his title, and he being doubtful, it places the vendee upon inquiry, and he will only take such title as the vendor had and no more.

In the recent case of Arnett v. Stephens, 199 Ky. 733, this whole question was exhaustively considered, and the distinction clearly pointed out between the conveyances which will support, and those which will not support the plea of *bona fide* purchase. The court, after treating the assignment by a lessee of all his right, title and interest in an oil lease as nothing more than a quitclaim deed, proceeded to discuss the difference between a quitclaim deed wherein there is a conveyance of the land itself, and one wherein there is only the conveyance of the right, title and interest of the vendor, and said:

"There is a well-recognized distinction, running through all well-considered cases, between a deed which purports to convey the land itself and one which pur-

ports to convey only the right, title and interest of the vendor. In such quitclaim deeds of the first class above mentioned, the vendor takes the land free from all equities of which he did not have actual or constructive notice; such deeds being in the usual form, but without warranty of title, are effective for the purpose of conveying the property from the vendor to the vendee. The second class quitcliam deeds are those which do not constitute the vendor a *bona fide* purchaser. Such instruments generally recite in substance that the vendor sells and conveys all of his right, title and interest in and to the real property described, but does not purport to convey the real property itself. If in the deed there are words which reasonably import that the grantor intended to convey the land itself and not merely his right, title and interest therein, the vendee may occupy the position of a *bona fide* purchaser.''

The quoted text is supported by a long list of authorities and appears to be conclusive of the question here presented.

The distinction appears to be that a conveyance without warranty by a vendor, but which conveys the property described, is equivalent to an assertion of ownership by the vendor, and will therefore support a plea of *bona fide* purchase; but a conveyance wherein the vendor asserts no ownership in himself, but merely conveys whatever right, title or interest he might have, immediately puts his vendee on notice that he is getting a doubtful title, and the same will not therefore support a plea of *bona fide* purchase for value. One conveyance purports to convey to him the title to the land described; the other purports only to convey to him whatever title, if any, the vendor might have. In the latter case it is clear the vendee can only hope to take such title as his vendor has, and expects no more.

The defendant likewise claims title by adverse possession. The claim is based upon the alleged adverse possession of its vendor, Shepherd. The evidence discloses that in 1870 Shepherd moved on to Quicksand at or about the mouth of Sugar Camp branch, and that he claimed some sort of right or interest under Howard and Barnett; but no deed or conveyance of any kind from either of them to Shepherd is produced. It is apparent, however, from the evidence that Shepherd only claimed about 100 acres of land and only assessed that much, and

that no part of it could have been within the lines of the patent in question. While his conveyance to appellee in 1907 did embrace at least a part of the patent in question, it is reasonably clear from the evidence that Shepherd never had any actual possession of any part of the patented tract. He never lived on it, he never made any clearing or improvement on it, and never exercised any open or notorious acts of ownership or possession. The only thing he ever did in relation to the land was to authorize others to take certain poplar timber from it.

The fact that Shepherd had the actual possession of a nearby or adjoining tract of land did not give to him such possession of the land in controversy as would ripen into a title by adverse possession. There is a total absence of a showing that he actually occupied it, or by his conduct took such open and notorious steps as would give notice to the owner that he claimed it. The evidence wholly fails to show any such possession, for it is shown that the patented land has never in fact been occupied by any one, and that no part of the same has ever been cleared, nor has any improvement of any kind been placed thereon. In fact a very small part of the timber has ever been removed.

But it is argued for appellee that as it was the duty of Smith to re-record his deed within a reasonable time, or supply the record as provided by the statute, he must suffer consequences of his laches, or be barred by limitation. His laches, however, do not appear to have injuriously affected his adversary, for the latter, as we have seen, has failed to bring himself within the category of a *bona fide* purchaser without notice, and the opinions referred to are distinctly placed upon the ground that equity will not disturb a *bona fide* purchaser whose purchase is brought about by the negligence of the title holder.

It is likewise argued for appellee that while the statute fixes no time within which such a deed must be re-recorded, or such a proceeding instituted, that appellant is barred because of Smith's failure to re-record his deed until the year 1911. In support of this view the cases of Allen v. Froman, 96 Ky. 317, and Brandenburg v. Mc-Guire, 19 R. 1598, are relied upon.

The first named case was where a will of one who died in 1868 was first offered for probate in 1890, and the court held that while there was no statute in terms fixing

the limit of time within which wills may be probated, it is the legislative policy in this state to fix in every case a limit of time for beginning every action or proceeding for relief, and consequently applied the general provision that an action for relief not otherwise provided for can only be commenced within ten years next after the cause of action accrued. The plea of limitation in that case was sustained at the instance of the heirs at law of the decedent and of their vendee.

The second case was an action under the statute to supply a lost deed claimed to have been recorded in the year 1862, and to have been destroyed, and the court held that while there was no statute of limitations expressly referring to such an action, the statute for the recovery of real estate by analogy was applicable, and sustained the plea of limitation, and that plea was presumably interposed by parties whose rights had intervened since the destruction of the deed in 1862. Here there is no intervening right authorizing the holder to interpose such plea.

This, however, is no such action; it is merely an action for trespass to try title. The plaintiff is not asking that his deed be re-recorded or re-established. He is relying upon his record title, and that record title appears to go back to the Commonwealth, although for 38 years he had no title on the record by reason of its destruction.

There is no fixed statutory period within which he might re-record his deed, and if he through carelessness does not re-record it or take steps to re-establish it as provided by statute, he takes the chance of being deprived of his title through his own negligence, because of the intervening rights of innocent purchasers. But where there is no such intervening right, it would be a harsh rule to say that he might not at any time in the future, when such action would not injuriously affect the rights of others, re-record his instrument and re-establish his record title.

If, as appellee suggests, his title is barred because he has not within a given period re-recorded his deed or re-established his title, in this case where would the title rest? The plaintiff's title is barred, the defendant has acquired no title by his deed from the heirs at law, because they had no title to convey him, and the Commonwealth has parted with its title to the elder Amyx; no-

body has acquired title by adverse possession, and the result would be the title would rest nowhere.

This of course is wholly impracticable, and we feel it is perfectly sound to hold that until there has been an intervening right the failure of the title holder to re-record his deed in such circumstances will not, by mere lapse of time, deprive him of title in the absence of an express statutory provision.

There was an issue in the pleadings as to the proper lines of the patent in question, and particularly as to the beginning point. Because of the directed verdict there was no finding by the jury on this issue, and consequently we will not pass upon it. But upon the return of the case, while the court will direct a verdict for the plaintiff, it may submit to the jury, under proper instructions, the questions affecting the lines.

The judgment is reversed with directions to grant the appellant a new trial, and for further proceedings consistent herewith. Whole court sitting.