## Fugate v. Fugate.

(Decided Jan. 30, 1934.)

T. E. MOORE and P. T. WHEELER for appellant.
JESSE MORGAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The subject-matter of this litigation is a tract of about 15 acres of land on Ball's fork of Troublesome creek in Perry county, Ky. H. B. Fugate instituted this action alleging that he is the owner and in the actual possession of a boundary of 160 acres more or less which includes the land in controversy; that he has

actually resided upon, occupied, and used same for farming and other purposes, holding and claiming same adversely to the full extent of the boundary which is well marked and defined for more than fifty years; that Elhannon Fugate has entered thereon and cut and removed timber and is making claim thereto, thus casting a cloud upon plaintiff's title. He asked that the title to the entire tract of land be quieted and that defendant be perpetually enjoined and restrained from entering upon the boundary for any purpose and for $500 damages for the acts of trespassing in cutting and removing timber.

By answer and counterclaim, defendant controverted the allegations of the petition and alleged that he was the owner of the surface and in the actual possession of a tract of land, the boundary of which includes the land in controversy, and that the Kentucky Coal Corporation is the owner and in actual possession of all coal, oil, gas, and mineral rights thereunder.

On final hearing it was adjudged that plaintiff was the owner and entitled to possession of the tract of land described in his petition and that defendant be enjoined and restrained from entering thereon or from cutting and removing any timber therefrom. Defendant is prosecuting this appeal.

Appellee has no record or paper title to the tract of land described in the petition and judgment, but the evidence shows that he and those under whom he claims have been in the adverse possession of some land immediately below and adjoining the land of appellant on Ball's fork for more than forty years. Appellant makes claim to all the land included in the H. C. Godsey patent, No. 8958, for 150 acres surveyed February 7, 1845, and has a record title running back to a conveyance from John B. Fugate to Marchont Fugate dated November 7, 1896, but he cannot trace his chain of title back to the Godsey patent; however, the evidence establishes beyond question that appellant and those under whom he claims have been in the adverse possession of a considerable portion of the Godsey survey since the earliest recollection of the older residents of the community.

In 1910, M. C. Fugate, appellant's predecessor in title, conveyed to the Kentucky Coal Land Company the

minerals under certain portions of the Godsey patent including all the land in controversy. The lower line of that survey runs parallel with and a very short distance above the lower line of the Godsey patent as shown on plats filed in evidence. This line is well marked and well defined and has been, at least, since it was surveyed at the time the mineral deed was made.

The evidence of appellant is in effect that he and those under whom he claims have for many years and more than the maximum period of limitation been the owners, in possession of, and claiming title to the land to this line. The upper line of the tract to which appellee is asserting title is above the marked line to which appellant claims, and begins at a marked hickory in or near the west line of the Godsey patent on top of a ridge and runs with a point of the ridge to Ball's fork opposite or near the mouth of Cow hollow which it is alleged is the old "conditional" or agreed division line between Bloomer Fugate and Martin Fugate; thence across Ball fork to a rock in a lick or muddy place just above the mouth of Cow creek; thence a straight line to the top of a point below Cow hollow. Appellee testified that thirty-five or forty years ago he and John and Martin Fugate agreed on this as the division line between their lands; that at the time John Fugate lived upon the Godsey patent above this line, he lived where he now lives, below; and that Martin Fugate also lived below.

The evidence shows that appellee claims and has had certain land fenced and under cultivation for many years, but the maps offered in evidence show the line of this fence extends slightly above the line claimed by appellant for a short distance and includes only a fraction of an acre of the land in controversy. There is also evidence that this fence was apparently intended to be on the marked line to which appellee claims and extended over only to avoid running through a ravine or depression. The evidence of appellee as to the extent of the land he has inclosed with fencing is rather vague and indefinite.

A number of witnesses testified that they had heard the owners of the respective lands refer to the "conditional" line. One witness testified that he happened along about the time appellee claimed the line was agreed upon and heard the parties discussing it. The evidence further shows that at intervals appellee has

cut and removed timber from the land in controversy. Title papers introduced in evidence refer to a "conditional line."

Appellee admits that he knew when Martin Fugate sold the mineral rights in 1910, and that he saw and followed the marked line to which appellant claimed, and that the deed included minerals under the land in controversy; that when he learned they were running the line, he went down to see whether they were running on his boundary. He further testified that M. C. Fugate cut and removed timber from the land in controversy and down to the marked line at various times and that he made no objection. He gave as his reason for not objecting that he was afraid of M. C. Fugate.

The sum of the evidence to establish appellee's title to the land involved is that he and the owners of adjoining land above him agreed upon a "conditional" line and that he has claimed to it and for a number of years has entered thereon and cut and removed timber. Only a very small portion of the land has been cleared or cultivated so far as the evidence discloses, and this is under the fence which at one point extends slightly over the marked line claimed by appellant. On the other hand, the evidence of a number of witnesses shows, and appellee admits, that for a number of years M. C. Fugate, who owned the land above, went upon the tract in controversy at pleasure and cut and removed timber, and that appellee knew of this and not only made no objection but apparently acquiesced in it. The line claimed by him is not marked nor well defined.

Merely making claim to land without title or possession will not ripen into title. Hillman Land & Iron Co. v. Marshall (Ky.) 119 S .W. 180. To acquire title to land by adverse possession it must be established that the holding and possession has been actual, notorious, exclusive, hostile, continuous, peaceable, and adverse for the full statutory period. Lashly v. Duvall, 226 Ky. 685, 11 S. W. (2d) 708 and authorities therein cited.

In order to establish title to an agreed line, it is necessary that possession to such line must be taken and held under the agreement in such a way and in such a manner as will support title by adverse possession. Williams v. Brush Creek Coal Company, 149 Ky. 188, 148 S. W. 372. Before one can acquire title by adverse pos-

session to land to which he has only color of title or no title, he must enter thereon with the intention of holding it and must claim to well-marked and well-defined boundaries, continuously for at least fifteen years, and the holding must be evidenced by such physical acts as will bring constant notice to others of the nature and character of his holding, such as the making of improvements, clearing, cultivating, or such other acts as evince a purpose to hold in hostility to the real owner or to other claimants. Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629. Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075.

Appellee could not extend the boundary of land to which he had acquired title so as to include adjoining wild land by sporadic entry or cutting of timber or by permitting others to make such entry for the purpose of cutting and removing timber. Swango v. Kentucky Coal & Timber Development Company, 200 Ky. 522, 255 S. W. 114.

Viewing the proven facts and circumstances in the light of the foregoing authorities, it is manifest that appellee has utterly failed to establish title to the land in controversy by adverse possession or otherwise, except to the small portion which he has actually had under fence and has been cultivating for a number of years. Since appellee must rely upon the strength of his own title, it is unnecessary to go into the evidence as to the claims of appellant. Appellee has wholly failed to establish title in himself except to the extent above indicated, and it therefore follows that the judgment of the lower court is erroneous.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.