BAND, J.
 

 This is a suit in equity to quiet title to a group of 60 unpatented placer mining claims embracing some 1,200 acres of placer mining ground situate on or near the head of the Grande Bonde river in Union county.
 

 In her complaint, the plaintiff alleged that she was the owner, subject only to the paramount title of the United States, and in the actual possession of said unpatented placer mining claims. She also alleged in her complaint that the “above named defendants, or some of them (without designating who), claim some estate or interest in or to the above described mining claims” adverse to her.
 

 
 *5
 
 There are 72 persons named as defendants in this suit, 40 of whom failed to appear and are in default for want of an answer. The remainder of the defendants demurred to the complaint on the ground that the court had no jurisdiction of the subject matter of the suit, that several causes of suit had been improperly united, and that the said complaint failed to state facts sufficient to constitute a cause of suit. These demurrers were overruled and the demurring defendants then filed a joint answer in which they denied that the plaintiff was the owner or in the possession of said mining claims or any thereof, and alleged that the answering defendants were the owners in severalty, subject only to the paramount title of the United States, and in the actual possession of parts of the ground claimed by the plaintiff under and' by virtue of valid and subsisting placer and quartz mining locations made by them at a time when the ground covered by such locations was vacant and unappropriated public mineral lands of the United States and subject to location as such.
 

 These allegations were denied by the reply. There was no allegation in the answer that any of the ground claimed by the defendants under their several locations had been previously located. Nor was there any allegation that the rights of the former locators, if there were any, had become forfeited by reason of their failure to perform the annual assessment work thereon.
 

 The trial resulted in a decree quieting plaintiff’s title to all the premises in controversy, and the answering defendants have appealed.
 

 Plaintiff bases her title to the premises in controversy wholly on a sheriff’s deed executed on January 26, 1918, by the sheriff of Union county, which purported to convey the 60 mining claims mentioned in
 
 *6
 
 the complaint to her deceased husband, Turner Oliver, a lawyer who resided in La Grande and died intestate on January 7, 1924, leaving surviving him the plaintiff as his sole heir at law. A certified copy of the sheriff’s deed was offered and received in evidence and it recites that it was executed by virtue of a decree, order of sale and execution duly issued out of the circuit court for Union county in a cause wherein E. J. Stuart was plaintiff and the Camp Carson Mining and Power Company, Incorporated, Turner Oliver and others (naming them), were defendants. It also recites that none of the defendants named in that suit, except the Camp Carson Mining and Power Company and Turner Oliver, had or owned any of the therein-after described mining property, or had any interest therein or lien thereon. Neither the decree nor the execution in that suit was produced and there is no allegation or proof that plaintiff’s deceased husband acquired any title or interest in the property mentioned in the sheriff’s deed from any other source or in any other manner than by said deed alone. None of the defendants named in the former suit are defendants in this suit and, therefore, whatever proceedings may have been had in that suit, they are as to these defendants
 
 res inter alios acta.
 
 Nor was there any evidence offered of any of the proceedings had in that suit except the mere recital's contained in the deed and above quoted, and these were not admissible to prove that a decree was entered or that an execution was issued thereon, since they are not the best evidence of those facts.
 

 The title of a purchaser at a sale of real property on execution rests upon the judgment, execution, sale and sheriff’s deed. In the absence of a judgment or decree, no execution for the sale of mining property
 
 *7
 
 can lawfully issue, and, of course, unless an execution has been issued and delivered to him, the sheriff has no authority either to sell real property or to execute a sheriff’s deed. In performing those acts, the sheriff exercises a delegated authority and, hence,, his recital in the sheriff’s deed that a judgment was rendered and an execution issued is not the best evidence of those facts. To prove them, the purchaser must produce the judgment and the execution, for otherwise there would be no evidence of the sheriff’s authority to make the sale or to execute the deed. The recitals in a sheriff’s deed, therefore, standing alone and without the production of the judgment are not sufficient to prove title in the purchaser at an execution sale of real property. In
 
 Faull v. Cooke,
 
 19 Or. 455, 464 (26 P. 662, 20 Am. St. Rep. 836), this court said:
 

 “An execution, regular upon its face, emanating from a court of competent jurisdiction, will protect an officer who obeys it; but the rule is different when a purchaser claims under an execution sale. In such case it is well settled that a person seeking to recover property, and basing his claim upon an execution sale, must prove the judgment upon which the writ issued.”
 

 Freeman, in his work on Executions (2d Ed.), section 350, says:
 

 “At all events, it seems now to be quite well settled that a person seeking to recover property, and basing his claim upon an execution sale, must prove the judgment upon which the writ issued.”
 

 In
 
 Robinson v. Thornton,
 
 102 Cal. 675 (34 P. 120), the court said:
 

 “As against the judgment debtor, the production of the judgment execution, and sheriff’s deed is prima facie evidence of the plaintiff’s right to recover; but, if the action is against a stranger to the judgment, the
 
 *8
 
 plaintiff must also show that the judgment debtor had the title or possession of the land at the date of the lien or of the sale. ’ ’
 

 Under the application of this rule, the evidence offered, without the production of the judgment itself, would be insufficient to prove title in plaintiff’s intestate even as against the defendants in the former suit, and, since all the defendants in this suit were strangers to the decree in the former suit, even though the judgment had been produced, the evidence would have been wholly insufficient to prove that plaintiff’s intestate acquired any title or interest in the property in controversy here without some additional proof being offered, showing that the defendants in that suit had some right, title or interest which could' be divested by an execution sale. There was no evidence offered in this case showing or tending to show that the Camp Carson Mining and Power Company, Incorporated, Turner Oliver, or any of the other defendants in that suit, ever had or claimed to have any right, title or interest in or ever were in possession of any of the mining claims mentioned in the sheriff’s deed and, hence, the evidence offered upon the trial of this cause wholly fails to show any title to the property in controversy in the plaintiff.
 

 It is well settled, says Mr. Freeman, op. cit., section 352, that:
 

 “A purchaser at an execution or judicial sale may obtain nothing by his purchase. This is the case — 1. When the proceedings are so defective that they cannot divest the defendant of his title; and 2. When the defendant had no title to divest, or at léast had no title which was capable of being divested by the sale.”
 

 It is admitted in the pleadings and proof that the property in controversy here consists entirely of un
 
 *9
 
 patented placer and quartz mining ground. Hence, in order to show that the defendants in the former - suit had some interest in this property of which they could be divested by an execution sale, it was also necessary for the plaintiff to show that such interest arose under a valid mining location or locations, and that the defendants in that suit had acquired the title thereto, or some right, title or interest therein, of which they could be divested by an execution sale. No such evidence was offered or attempted to be offered.
 

 Plaintiff, however, did offer in evidence the location notices of five placer mining claims which had been located and recorded in September, 1898, being plaintiff’s exhibits D-l to D-5, inclusive, and known as the Alpha, the Beta, the Hobo, the Fiasco and the Klondike placer mining claims. None of -the defendants in the former suit were the locators of said claims and there is no evidence tending to show that the title acquired by the locators thereof ever passed to or became vested in any of the defendants in the former suit.
 

 Hence, we are constrained to hold that there has been a total failure of proof upon the part of the plaintiff, showing or tending to show that her intestate acquired by purchase or otherwise any right, title or interest whatever in any of the mining claims in controversy here.
 

 Plaintiff contends, however, that she and her deceased husband having held and worked these claims for more than 10 years prior to the time of their re-, location by the defendants, her husband having entered into their possession under color of title, such possession and working of the claims during said period avoids any necessity of proof upon her part that the claims had been previously located or, if located, that her husband had acquired title thereto from the lo
 
 *10
 
 cators thereof. She bases this contention upon section 2332, U.S.R.S., which provides:
 

 “Where snch person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and worldng of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; but nothing in this chapter shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property thereto attached prior to the issuance of a patent.”
 

 In order for her to rely upon the provisions of that section, it was necessary for her to show that, for a period of ten years prior to the relocation by the defendants of parts of this property, she and her deceased husband had been in the open, actual continuous and exclusive possession of these claims and had performed the annual labor required to hold the claims during that period. In other words, it was necessary for her not only to show that she and her deceased husband were in possession of the property but also that she had done the annual labor required by the federal statutes. Referring to this particular statute, the court, in
 
 Upton v. Santa Rita,
 
 14 N. M. 96, 123 (89 P. 275), said:
 

 “We believe that the true rule on the subject is succinctly stated in Altoona Co. v. Integral Co., 114 Cal. 100, where it is said that ‘working for the statutory period before the adverse right exists is equivalent to a location under the Act of Congress’ and in Belk v. Meagher, 104 U. S. 279, 287, where it is declared to be the ‘equivalent of a valid location’. In other words a party who has done such work occupies the status and possesses the rights of a locator, no more and no less.
 
 *11
 
 As in the case of a holder of a valid location he has good title as against all but the government so long as he does the annual labor. As is said by Judge Hallett in Harris v. Equator Company, 8 Fed. 863:
 

 ‘A presumption is indulged that the location was regularly made in the first place and the party is allowed to remain so long as he shall comply with the conditions on which he holds the estate.’
 

 When such party comes to apply for patent, his occupancy must be proven under certain regulations of the department (2 Lindley 1714) and when so proved, if there be no adverse claimant, they are sufficient as the statute says ‘to establish a right to a patent’. But in this he stands on the same basis as the holder of a location whose application is uncontested. The holder of such a possession no less than the holder of a location must possess the necessary qualifications as to citizenship. Anthony v. Jillson, 83 Cal. 296. He must prove, as well as the locator, the possession of $500.00 worth of labor or improvements before he can secure patent. Capital No. 5 Placer Claim, 34 L. D. 462, supra. Pending his right to patent he must likewise perform the annual assessment required of the locator, for R. S. 2324 requiring such work ‘until patent shall be issued’ makes no exception in his favor, and in default of this his claim is subject to relocation. ’ ’
 

 In the Altoona case, 114 Cal. 100 (45 P. 1047), Judge Temple, referring to this section and speaking for the court, said:
 

 “® * * It must, therefore, follow that where such possession has continued' for five years before the adverse right exists, it is equivalent to a location under the laws of Congress. (See, also, Harris v. Equator Min. etc. Co., 8 Fed. Rep. 863; Belk v. Meagher, 104 U. S. 279; Anthony v. Jillson, supra.) ”
 

 In
 
 Humphreys v. Idaho Gold Mines etc. Co.,
 
 21 Idaho 126 (120 P. 823, 40 L. R. A. (N. S.) 817), Judge Ailshie, speaking for the court, said:
 

 “Mr. Snyder, in his work on Mines, vol. 1, sec. 672, in discussing the application of see. 2332 of the Revised
 
 *12
 
 Statutes of the United States to the statute of limitations and the method of acquiring title thereby, says:
 

 “ ‘The effect of this statute is to relieve the applicant from the necessity of proving his location of the claim, the location by his predecessors or the furnishing of an abstract of title, as in other cases, but he is required to furnish a duly certified copy of the statute of limitations of the state or territory, together with his own sworn statement showing the facts as to the origin of his title and continuation of his possession of the ground applied for, the area thereof, the nature and extent of the work done, whether there has been any opposition to or litigation regarding his possession of the ground, and if so when the same ceased, whether such cessation was the result of compromise or judicial decree, and any other facts bearing upon the question. . . .
 

 “ ‘This provision relates solely to the procedure relative to proving title. All other steps in the matter of application are the same as heretofore outlined. And where an adverse claim is filed in the land office, the applicant is obliged to defend his rights in a court of competent jurisdiction, the same as though his application were based upon a valid location; but upon the trial, as in the land office, proof of possession and work for a period equal to the statute of limitations would be ■equivalent to a location. It would seem that he ought also to furnish proof that the claim was actually marked upon the ground by him or his predecessors, and that such markings correspond substantially with the description of the claim as surveyed and applied for. His status, however, if an adverse claim is filed, is not so clear. If the owner’s boundaries are plainly marked and an actual adverse possession maintained, it would seem to be equally conclusive against the adverse claimant. But that is an independent fact, and the adverse claim must rest upon its own merits. The statute simply undertakes to dispense with many of the formalities in the way of proof in the absence of an adverse claim.’
 

 “Mr. Bindley, in vol. 2 of his work on Mines, at sec. 688, takes substantially the same view, and in support thereof places special reliance on the opinion of Judge
 
 *13
 
 Sawyer in 420 Mining Co. v. Bullion Mining Co., 3 Saw. 634, Fed. Cas. No. 4989, 11 Morr. Min. Rep. 608, 9 Nev. 240. To the same effect, see Harris v. Mining Co., 8 Fed. 863, 3 McCrary, 14, 12 Morr. Min. Rep. 178, 37 L.
 
 D.
 
 772, and Snyder on Mines, secs. 155 and 357.
 

 > “It seems to ns that the provisions of see. 2332 of the Revised Statutes of the United States are intended to obviate the necessity for proof of posting and recording a notice of location in cases where the claimant to mineral ground has been in the actual, open and exclusive possession of the ground for a period equal to that required by the local statute of limitations governing adverse possession of real estate. The adverse possession referred to in the statute is intended to supply the place of an abstract of title and such proofs as are furnished by the county recorder. It still remains, however, for the person who asserts claim by adverse possession to have made a mineral discovery and to have performed the annual assessment work, and to have had the boundaries of his claim so marked and indicated as to afford actual notice of the extent and boundaries of his claim and possession, and to have maintained ah actual possession and excluded all adverse claimants for the full period prescribed by the statute, and to have likewise maintained his possession and occupancy during the subsequent period of time in which the adverse locator attempted to initiate his right by locating the claim.”
 

 Again, as was said by the supreme court of Montana in
 
 Hopkins v. Noyes,
 
 4 Mont. 550 (2 P. 280):
 

 “Possession within a mining district, to be protected, or to give vitality to a title, must be in pursuance of the law and the local rules and regulations. Possession, in order to be available, must be properly supported. . . . The mere naked possession of a mining claim upon the public lands is not sufficient to hold such claim as against a subsequent location, made in pursuance of the law, and kept alive by a compliance therewith.”
 

 
 *14
 
 It will thus be seen that section 2332 of the Revised Statutes refers merely to persons and associaT tio'ns who have complied with the terms of the mining laws and have applied for a patent for a mining claim and who are unable to show that the claim had ever been regularly located, and that its effect, when construed in connection with the other federal mining statutes, is simply to declare that possession for the statutory period is the equivalent of a valid location but does not relieve the applicant of the necessity of showing performance of the necessary assessment work in addition to possession for the statutory period. See
 
 McCowan v. Maclay,
 
 16 Mont. 234 (40 P. 602). Also see cases cited in notes, Title 30, U. S. C. A., pp. 314-315. As stated in one of said notes, the claimant to mineral lands of the United States, who has been in the open, exclusive adverse possession of a claim for a continuous period equal to that required by the local statute of limitations governing adverse possession of real estate, is relieved of the necessity of making proof of posting and recording a notice of location and such other proofs as are usually furnished by the county recorder. But this section is not available unless the proof of possession is sufficient upon which to presume that all steps necessary to effect a location had been taken. And, as stated, the applicant must show performance, of the necessary assessment work in addition to possession for the statutory period: This section, therefore, can have no application here for the reason that no open, exclusive, adverse posses■sion of all or any of these claims by plaintiff or her ■deceased husband has been shown, and there is a total failure of proof showing that, during the time claimed, the necessary assessment work for any one year has been performed upon any of the claims in controversy.
 

 
 *15
 
 Moreover, thé provisions of that section would not be available to plaintiff had there been no adverse claim and had she applied for a patent for the whole group, for, before the patent could issue, she would be obliged to prove that she had expended in labor and improvements upon the group the sum of $30,000, or, for each single claim applied for, the sum of $500.
 

 It is contended that, because the defendants in their answer failed to specially plead that at the time the defendants made their relocations of parts of the ground claimed by the plaintiff the rights of the former locators had become forfeited because of their failure to do the annual assessment work, the defendants were not entitled to prove a forfeiture and, for that reason, the decree of the court below should be affirmed. We cannot agree with this contention. The record before us shows that, at the commencement of the trial, the plaintiff introduced a map in evidence to identify the grounds claimed by her and that the defendants then moved the court for permission to amend their pleadings so as to allege a forfeiture. Again, at the close of the testimony and after the proof showing that at the time these relocations were made the ground so relocated was vacant public mineral lands of the United States, the defendants renewed their motion and that both of said motions were denied. If the rights of the defendants depended upon the special plea of forfeiture, it was the duty of the court to grant the amendment.
 

 It is well settled in this state that the power to amend a pleading should always be exercised in furtherance of justice and that, unless the circumstances of the case are such that an injustice would result to the opposite party from the granting of the motion to amend, an amendment should be allowed as a matter
 
 *16
 
 of course:
 
 Flint v. Phipps,
 
 20 Or. 340 (25 P. 725, 23 Am. St. Rep. 124). Moreover, the allegations of the complaint were such, until the map was introduced, that some or all of the defendants did not know that their relocations conflicted with plaintiff’s alleged claims.
 

 There is a conflict in the authorities as to whether it is necessary for a relocator of a mining claim to allege an abandonment and forfeiture of a location previously made thereon before he will be permitted to prove a valid relocation of the abandoned ground. Such seems to be the holding in
 
 Bishop v. Baisley,
 
 28 Or. 119 (41 P. 936), and certain cases were there cited in support of the rule so announced. Among the cases cited in support of the rule were certain decisions of the supreme court of California. That, however, does not seem to be the rule in California at the present time. In
 
 Contreras v. Merck,
 
 131 Cal. 211 (63 P. 336), which was an action in ejectment to recover the possession of a mining claim, the complaint alleged ownership in the plaintiff and the answer took issue thereon and alleged ownership in the defendant, and it was held that it was not necessary for the plaintiff to plead a forfeiture or abandonment of a prior location made by the defendant and that it was competent for the plaintiff to show that defendant’s location had become void and that the land was subject to relocation at the time when plaintiff relocated it. In that case, the court said:
 

 “The principal fact at issue was the ownership of the mine; it was not necessary for plaintiff to allege forfeiture or abandonment by defendant Merck. * * *
 
 *
 
 A mining claim is real estate, and the rules of pleading relative to real estate are applicable to it. In the ordinary action of ejectment it is sufficient for the plaintiff to allege that he was the owner of the land in question. Such an averment carries with it all the facts essential
 
 *17
 
 to establish his ownership, and the means by which he became the owner would be only evidence of his ownership and should not be alleged. ’ The same rule would apply to the defendants in setting up ownership in their answer. * * * It was competent for plaintiff to show that the location under which defendant Merck claimed ownership ‘had lapsed and become void’, and that when plaintiff initiated his claim the land was ‘vacant public mineral land of the United States’.”
 

 Again, in
 
 Trevaskis v. Peard,
 
 111 Cal. 599 (44 P. 246), it was held that abandonment of a mining claim in a suit to quiet title need not be specially pleaded but may be proved to rebut a title set up under an earlier location. Whether the decision in
 
 Bishop v. Baisley,
 
 supra, should be followed or a contrary rule annonced is a matter not now necessary for decision since the evidence shows that the defendants, when they filed their answer, were not sufficiently apprised of the location of plaintiff’s alleged claims so as to require them to specially plead forfeiture, if such was necessary. However, it seems to be settled by all the decisions that, whether forfeiture or abandonment be pleaded or not, the party relying upon it has the burden of proof to show such forfeiture or abandonment. See
 
 Bishop v. Baisley,
 
 supra; Morrison’s Mining Eights (15th Ed.), p. 113. Mr. Lindley notes an exception to the rule as follows:
 

 “An exception, however, to this last rule may be noted. Where a party shows that no work was performed by his adversary within the limits of a claim he makes out a prima facie case, and thereafter, should such adversary depend upon labor done outside the claim, the burden is cast upon him of proving the performance of such labor and proving that its reasonable tendency is to benefit the claim. 2 Lindley on Mines (3d Ed.), sec. 643.”
 

 
 *18
 
 As heretofore stated, there are 32 defendants who have appealed from this decree. These defendants composed two groups of individuals, neither of whom has any interests in common with those of the other, and, since their rights are dissimilar, they will be treated separately.
 

 The first group to be so treated will be designated as the Salisbury group and is composed of the following defendants: "William Burg, H. H. Salisbury, Anna Salisbury, Roy A. Coyle, Ida L. Hoffman, Ira L. Hoffman, Prank X. Luzon, Jesse Ward, Carl Porsberg, Margaret Gollings, Melvin G. Gollings, Raymond A. Gollings, Albert Horn and P. W. Stacy, who are either the locators or the grantees of the locators of the Night Hawk, the Night Hawk Extension, the Blue Bird No. 1 and the Blue Bird No. 2 placer mining claims. These locations were made between March 1 and June 30, 1931, and, in part, conflict with some of the ground claimed by the plaintiff. At the time these locations were made, there was some evidence on the ground of mining work that had been done many years before. No one was in possession of the ground or working thereon and there was no evidence whatever of any recent workings. Nor were there any marks or stakes on the ground indicating that the ground had been located in recent years or that any one claimed ownership thereof. According to the clear preponderance of the evidence, all the ground so located was at that time open, vacant and public mineral grounds and subject to location by any qualified locator.' These claims at the time this suit was commenced were in the actual possession of said defendants and were being held and worked by them, and no part thereof was in the possession of the plaintiff or any agent or representative of
 
 *19
 
 the plaintiff. As said in
 
 Strickland v. Commercial Mining Co.,
 
 55 Or. 48, 53 (104 P. 965):
 

 “Where, however, the appearance of a mining claim unmistakably indicates an abandonment of the premises for many years, and no stakes or other monuments mark the boundaries, such evidence warrants the assumption that all possessory right thereto has been relinquished, and authorizes another location thereon.”
 

 We, therefore, hold that, as to said defendants, they are the owners in possession and entitled to the possession of said four above described placer mining claims.
 

 We further hold that, regardless of what may be the rule in this state as to the necessity of a special plea of forfeiture to entitle a relocator of a mining claim previously located to prove a valid relocation, there was no such necessity here so far as these particular defendants were concerned for the reason that any outstanding title which previously may have existed in favor of others had no relevancy, under the facts proved in this case, to the rights of either the plaintiff or said defendants. See Morrison, Mining Eights (15th Ed.), p. 113.
 

 For another reason, the plaintiff is not entitled to a decree quieting title to the four placer mining claims last above referred to. As stated, the plaintiff alleged in her complaint that she was the owner and in the actual possession of all the claims mentioned therein, and this allegation was not only denied by the defendants owning said four claims, in their answer, but they alleged that they were in the actual possession thereof under a claim of ownership. In order to entitle the plaintiff to a decree quieting title to these claims, since her rights were possessory only, it was necessary for her to allege and prove that these claims were not in the actual possession of some other person, and, be
 
 *20
 
 cause of her failure to make such proof, she is not entitled as against these defendants to a decree.
 

 This suit was brought pursuant to section 6-1001, Oregon Code 1930, which provides:
 

 “Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates.”
 

 In a suit brought under that section, where, as here, the title sought to be quieted is a legal title, the jurisdiction of a court of equity in a suit to quiet title is, by statute, made to depend upon the fact that the property the title to which is sought to be quieted is not in the actual possession of another. There are cases, of course, where the estate or interest sought to be protected is an equitable estate or interest and legal remedies are, therefore, impossible. In such a case it is wholly immaterial whether the plaintiff is in or out of possession. See
 
 O’Hara v. Parker,
 
 27 Or. 156, 168 (39 P. 1004), and
 
 State v. Warner Valley Stock Co.,
 
 56 Or. 283, 309 (106 P. 780, 108 P. 861). But where, as here, plaintiff’s alleged title to these four claims was purely a legal title, it being merely a possessory right only, for a violation of this possessory right she had an adequate remedy at law by an action in ejectment.
 

 Not only is this so, but, since these particular defendants were in the actual possession of these four claims under a claim of right, before their possession could be disturbed, they had the constitutional right to a trial by jury under section 17 of Article I of the state constitution, and, if this decree could be upheld as against them, it would result in a denial of such right.
 

 
 *21
 
 There is no merit in the contention now made by the plaintiff that, because the plaintiff and the defendants owning these four claims, through their agent, H. H. Salisbury, and one John J. Dann, on the 5th day of July, 1933, entered into a tripartite agreement, wherein the plaintiff and Salisbury agreed to pool their respective interests in the properties claimed by them for the purpose of making a sale to Dann, was a recognition by either plaintiff or Salisbury that either thereof had a superior right to any of the property in controversy. That agreement was entered into for the temporary purpose only of making a sale of whatever interest each of them had in the properties. A small payment was obtained and divided between them and the contract became terminated upon the failure of Dann to make the subsequent payments provided for in the contract. There was no intention by either party to surrender their rights or to recognize a superior right in the other, and neither of said parties is now estopped by anything contained in the contract from asserting their rights in the properties in question.
 

 As heretofore stated, some of the answering defendants joined in the location of a certain part of the premises claimed by the plaintiff and others in a different part and, although all were joined as defendants in this suit, the members of one of the groups have no interest in common with the members of the other group. The rights of one group in the claims located by them have already been determined. The rights of the defendants composing the second group will be considered separately since their rights depend upon a wholly different state of facts.
 

 The members of the second group consist of F. M. Cronkhite, Bessie M. Cronkhite, Gladys Cronkhite, Ted A. Stoll, Robert F. Renard, Chauncey F. Giles, Douglas
 
 *22
 
 E. King, Herbert F. Manny, Frank B. Pierce, Frank A. "Ware, Alexander Sweek, Bessie Haynes, Enssell Jones, Stella Jones, Enth Manny, William David Scott and Herbert Walrath. They, or some of them, claim to be the locators of the Golden Fleece placer mining claim, located on May 31, 1932, the Swastika placer mining claim, located on March 31, 1932, the Golden West placer mining claim, located on May 16,1932, the Silver Bow placer mining claim, located on April 30,1932, the Grubstake placer mining claim, located on July 2,1934, the Humdinger placer mining claim, located on June 30, 1934, the Last Chance placer mining claim, located on April 20, 1935, the Gladys quartz mining claim, located on June 6,1933, and the Pay-Streak quartz mining claim, located on June 21,1934. Bessie M. Cronkhite and Gladys M. Cronkhite were the locators of the Gladys, and F. M. Cronkhite and Eobert F. Eenard of the Pay-Streak.
 

 To determine the rights of the parties to the mining ground covered by said placer and quartz mining locations, it is necessary to consider other facts which will now be stated.
 

 On February 11, 1931, the plaintiff leased to F. M. Cronkhite all the property mentioned in her complaint herein for the period of 20 years and Cronkhite entered into possession of the property pursuant to the terms of said lease. Under its terms, he was given an option to purchase the property and he obligated himself to take possession and operate the property and to perform all the required assessment work thereon and pay over to the plaintiff a stated percentage of the moneys realized from its operation. The lease also provided that if the lessee failed to perform its terms and conditions he would, upon such default, deliver
 
 *23
 
 the possession of the property to plaintiff promptly and in good repair.
 

 Cronkhite failed to perform the covenants and conditions contained in the lease and, because of such failure, plaintiff, on February 8, 1932, cancelled the lease and gave due notice thereof to Cronkhite. Instead of surrendering the property upon such cancellation, as he had agreed to do, Cronkhite remained in possession thereof, and, while so in possession, induced certain of the defendants to execute and deliver to him their powers of attorney, authorizing him, in their names, to locate mineral claims, five of which said powers of attorney are dated as of March 29, 1932. Pursuant to the powers thus conferred, Cronkhite located the seven placer mining claims above mentioned. Two of these, however, the Humdinger and the Grubstake, are not in conflict with any of the claims of the plaintiff and, therefore, will be eliminated from any further consideration in the case. The other five placer mining claims are in conflict either iii whole or in part with plaintiff’s claims.
 

 Upon Cronkhite’s refusal to surrender possession of the property, plaintiff, on June 18,1932, brought an action in ejectment against him in the circuit court for Union county and on August 25, 1932, obtained in said action a judgment by default, but, notwithstanding such judgment, Cronkhite still retained possession of the property until June 29, 1934, on which day he was ousted from the possession by the sheriff of that county under an order of the circuit court and one F. A. Holt, as agent for the plaintiff, was placed in possession of the premises by the sheriff and, from that time on, either Holt or some other persons have been in possession of the property as agents of the plaintiff and engaged in the working and development thereof, with
 
 *24
 
 the exception of the four claims that had been previously located by Salisbury and his associates. •
 

 By a joint resolution approved June 30, 1932, U. S. Statutes at Large, vol. 47, p. 474, Congress suspended the requirement that not less than $100 worth of labor or improvements should be expended on all unpatented mining claims for the year beginning on July 1, 1931, and ending at 12 o’clock meridian July 1,1932, and during every year thereafter Congress has made the same or a similar provision for each of the ensuing years. Consequently, plaintiff has not been compelled to do any annual assessment work on any of these placer mining claims since July 1, 1931, and all the above, mentioned placer mining claims claimed to have been located by this group of defendants were located subsequent to that date. It could not, however, excuse plaintiff’s failure to perform the required assessment work prior to July 1, 1931, and, if subject to location at that time, a location made after that date and before July 1, 1932, would not, if valid when made, be invalidated by the subsequent action of Congress in suspending the requirement for the performance of work for the year ending July 1, 1932, since the locator’s rights would have become vested prior to the passage of the resolution and, therefore, could not be invalidated thereby.
 

 Hence, the sole question in respect to these particular placer mining locations made by this group of defendants is: Were they valid when made?
 

 It is undisputed that the Grubstake and Humdinger placer mining claims do not conflict with any of the ground claimed by the plaintiff. Therefore, they were not the subject of the lease from plaintiff to Cronkhite and, hence, will be eliminated from any further consideration, since plaintiff has no right, title or interest in them, or either of them.
 

 
 *25
 
 Of the remaining five placer mining claims claimed by this group of defendants, four of them, namely, the Golden Fleece, the Swastika, the Golden West and the Silver Bow, were located prior to June 29, 1934, and while Cronkhite was in possession of them, holding over after his lease had been cancelled, and would not have been subject to relocation had Cronkhite performed his contract. These four placer mining claims were located by Cronkhite in the name of those from whom he had obtained powers of attorney and in the name of his wife, daughter and himself.
 

 A careful reading of the testimony convinces us that each of the said locators whose names appear upon said four location notices was acting in collusion with Cronkhite with full knowledge of Cronkhite’s relation to the property and of his duty to protect the property for the plaintiff and that said locations were made for the purpose of defeating plaintiff’s rights. While he was in possession of the property, Cronkhite was es-topped to dispute his lessor’s title and this estoppel continued until the termination of the lease and the surrender of the possession of the property, which, as stated, did not occur until June 29,1934, and, since the other locators of these claims were acting in collusion with Cronkhite, the estoppel applied to them at the time these locations were made as much as to him. Hence, since Cronkhite entered into possession of these premises under the lease and by the permission of the plaintiff, neither he nor they can now defend against his engagements to plaintiff by showing that there was a defect in his landlord’s title, or that she was not the owner of the leased property at the time the lease was made. See
 
 Wiggins Ferry Co. v. Ohio & M. R. Co.,
 
 142 U. S. 396 (12 S. Ct. 188, 35 L. Ed. 1055).
 

 
 *26
 
 By this, we do not wish to be understood as holding that the estoppel continued after the termination of the lease and surrender of possession. What we wish to be understood as saying is that a location, made by Cronkhite at a time when he was estopped from disputing his landlord’s title to property then in his possession as lessee, could not be validly located by him either in his own name alone or in connection with others who were acting in collusion with him and with full knowledge of his disabilities and, for this reason, we hold that as to these four locations, the locations were, when made, invalid and are invalid at this time.
 

 As to the Last Chance placer mining claim, it was, as stated, located on April 20,1935, after Cronkhite had been dispossessed by the sheriff and, of course, would not be subject to the same infirmity, but, as to this claim, the evidence shows that the location was made after the plaintiff had taken possession of the property and while she was in possession and after she had resumed work thereon. It is settled law that the resumption of work at any time prior to the lawful intervention of an intervening right prevents forfeiture : 2 Lindley on Mines, section 651. As stated in the same section:
 

 “A forfeiture does not ensue from the mere failure to comply with the law. It requires the intervention of a third party and a relocation of the ground before any forfeiture can arise. ’ ’
 

 But as we have heretofore shown, the mere occupancy of unpatented mining ground and even work being done thereon by the one in possession, in the absence of a previous location of the ground, is not sufficient to prevent its relocation by a qualified locator provided that the location is made peaceably and without force. See 1 Lindley on Mines, sections 218,219 and 330.
 

 
 *27
 
 While we have held that plaintiff, by failing to produce the judgment on which the execution sale was made and by failing to show that the defendants in execution were in possession or had any right, title or interest in the conveyed property, had failed to prove any title in her deceased husband at the time of his death which could descend to her as a matter of law, we did not intend to hold that she had no right, title or interest in these claims but simply that she had failed to show such right, title or interest which she was bound to do in order to maintain this suit as against any one not a trespasser thereon. The evidence in this case shows that plaintiff was in possession of the ground covered by the Last Chance placer mining claim and at work upon her alleged claims at the time that location was made and, hence, whether this location was valid when made depends upon facts not shown by the record. For that reason, the decree entered herein will be entered without prejudice to her rights in said property, if she has such rights, to have the same determined in some other suit or action.
 

 In their joint answer, the defendants allege that Bessie M. Cronkhite and Gladys M. Cronkhite are the owners and in possession of the Gladys unpatented quartz mining claim and that F. M. Cronkhite and Robert F. Renard are the owners of the Pay-Streak unpatented quartz mining claim. These allegations are all denied in the reply.
 

 There is nothing in the record to show where either of these claims is situated except the statement in the answer that each of them is situated in township 6, south of range 36, east of the Willamette Meridian, in Union county, Oregon. Whether they, or either of them, are located in whole or in part on any of the claims claimed by the plaintiff, the record does not disclose.
 
 *28
 
 By the decree appealed from, these four defendants, last above mentioned, are enjoined from asserting any right, claim or interest in all the mining claims mentioned in the complaint. This injunction would preclude these defendants from going on and working these claims if within the boundaries of any of the claims mentioned in the complaint. If these lodes exist within the placer limits of plaintiff’s claims and had not been appropriated by her but were appropriated by said defendants by peaceable methods and in good faith, it would be error to enjoin the defendants from holding and worldng these claims. See 2 Lindley on Mines, section 413.
 

 In support of their contention, said defendants offered in evidence a location notice of each of said quartz mining claims, showing that it had been recorded. Section 53-202, Oregon Code 1930, provides that the locator of a quartz mining claim shall file for record
 

 “ a copy of the notice so posted by him upon the lode or claim, having attached thereto an affidavit showing that the work required to be done by section 53-203 has been done and performed * * No location notice shall be entitled to record, or recorded, until the work required by section 53-203 has been done and the affidavit in proof thereof is attached to the notice to be recorded.”
 

 The notices offered of the two quartz mining claims do not have attached thereto any affidavit showing that said work was done before the claims were recorded as is required by said section. If said defendants are still in possession and the owners of said claims, they may remedy such defect by filing proper location notices and having the same recorded. The fact that there may be a conflict between the ground covered by said quartz mining locations and the ground claimed by
 
 *29
 
 .the plaintiff is of no importance since a perfected placer location does not confer the right to the possession of veins, or lodes, which may be found to exist within the placer limits at any time prior to filing an application for a placer patent, and such lodes may be appropriated by the placer claimant, or by others, provided the appropriation is effected by peaceable methods and in good faith: 2 Lindley on Mines, section 413. For this reason the decree as to them will have to be modified so that, if they are now the owners and in possession and entitled to work the claims, they will not be enjoined from so doing.
 

 For the reasons stated, the decree appealed from will be modified and the cause will be remanded to the court below with directions to enter a decree in accordance with what has been said herein, neither party to recover costs in this court, and it is so ordered.
 

 Bean, Kelly and Bailey, JJ., concur.