Argued October 6, reversed and remanded November 26, 1976

# YAQUINA BAY TIMBER AND LOGGING CO., *Appellant,*

*v.*

# SHINY ROCK MINING CORPORATION et al, *Respondents.*

## (No. 82567, SC 24,406)

556 P2d 672

*Paul Gerhardt,* Portland, argued the cause for appellant. With him on the briefs was John E. Johansen, Jr. of McCormick & Reynolds, Portland.

*Mark S. Dodson,* Portland, argued the cause for respondents. Also on the briefs were Oglesby H. Young and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Denecke, Chief Justice, and McAllister, O'Connell, Holman, Howell and Bryson, Justices.

O'CONNELL, J.

## O'CONNELL, J.

This is a suit in equity to quiet title to the surface rights of three patented mining tracts. Defendant, by way of a plea in abatement, challenged the equitable jurisdiction of the court, and after a hearing the trial judge abated the suit and dismissed the complaint. Plaintiff appeals from this decree.

Plaintiff's suit to quiet title was brought under ORS 105.605, which provides that,

> "Any person claiming an interest or estate in real property not in the actual possession of another may maintain a suit in equity against another who claims an adverse interest or estate therein for the purpose of determining such conflicting or adverse claims, interests or estates. * * *"

The complaint alleged that plaintiff was the owner of described real property except for mining claims and rights reserved to an ancestor in title; that defendants claimed an adverse interest in the surface rights of the property; and that the surface rights were not in the possession of another. Defendant Shiny Rock filed a plea in abatement, contending that it was in possession of the property by reason of its purchase of these mining rights; that because of this possession a suit to quiet title was improper; and that plaintiff's remedy was in ejectment. After a hearing on the issue of actual possession, the court found that the property was in the actual possession of defendant and accordingly dismissed the complaint for lack of equitable jurisdiction.[1]

[1] Under the Oregon Constitution, Art. I, § 17 and Amended Article VII, § 3, the right to a trial by jury exists in those classes of cases where a jury trial was customary at the time of the adoption of the constitution. Moore Mill & Lbr. Co. v. Foster, 216 Or 204, 224, 336 P2d 39, 337 P2d 810 (1959). Such a right, then, exists for an action at law in ejectment but not for an equitable suit to quiet title. Oliver v. Burg, 154 Or 1, 20, 58 P2d 245 (1936). The choice between these forms of action for a party seeking to determine ownership of real property depends upon who is in possession of the land. Under ORS 105.605, a party out of possession cannot maintain a suit to quiet title against a defendant in actual possession and must proceed by ejectment.

The land in controversy consists of three patented mining claims known as the Princess, Black Prince and King No. 4 claims, near the Little North Fork of the North Santiam river in Marion County. These claims are located together with several other tracts in a steep, heavily timbered canyon. The properties can be viewed at a distance from a Forest Service road which travels near the top of the canyon. Access to the bottom of the canyon is a road which follows the north side of the river. Defendant maintains locked gates on the lower road at each end of the Canyon. The gates are situated where the road bisects property completely owned by defendant. Defendant is the owner of several other mining claims in the area and has a mining camp on the road near the middle of the valley.

Because the claims in question are located south of the river and at a distance from the lower road, defendant constructed a spur road which branches from the main road, crosses the river and leads to the claims. At one point the spur road cuts across the corner of one of the claims. At the time of this suit, the construction of the road had stopped short of the claims. However, its ultimate course to the Princess mine portal had been marked. Testimony at the hearing established that the purpose of the spur road was to make it easier to remove timber windfalls from the surface of the property and facilitate movement to and from the mines. Prior to this construction defendant described the road as a "mining and logging road," in correspondence with the District Forest Ranger in order to build the spur road. Defendant reconstructed a bridge which spans the river. To do so, one or two trees from the Princess claim were felled for bridge

Thus, in City of Portland v. Hurst, 145 Or 415, 28 P2d 217 (1934), the court held: "Under the statute, absence of actual possession in any other person except the plaintiff himself is a prerequisite to the maintenance of the suit. It is a condition precedent which must be both alleged and proved in order to give the court jurisdiction over the cause. And if it is established upon the trial that the property is in the actual possession of the defendants, plaintiff's suit must fail and the plaintiff's remedy, if he has one, must be by ejectment."

timbers. In addition, cedar trees were sporadically harvested from the claims for posts and shakes to be used in the mining camp. Defendant pursued limited mining operations on the claims and some ore was removed from the mines for analysis. Sediment samples were taken from the streams and geochemical work was also performed. Trails on the claims which lead to the mine portals were maintained.

The evidence at the hearing disclosed that defendant has consistently questioned persons entering the valley, has given out questionnaires on the activities of passers-by, sold gold panning permits, and has told people that it controlled all the property in the area. At one point a representative of plaintiff was deterred from entering the area because of rumors of violence around the mining camp. Plaintiff contended, however, that its representatives were never personally excluded from the area. Plaintiff also presented proof that the properties could be reached for logging purposes by means of the Forest Service road which runs along a higher elevation in the canyon.

We have not previously defined with any specificity the meaning of "actual possession" for purposes of ORS 105.605. Actual possession is one of the elements of adverse possession. While the inquiry is different, some of the considerations applied in determining actual possession where a claim of adverse possession is asserted are applicable. As in the area of adverse possession, actual possession would necessitate activities which show an intent to hold land as one's own. Equivocal conduct which does not show this required intent such as an occasional or sporadic use would be insufficient to show actual possession. Whether such use is to be deemed occasional or sporadic may depend upon the character of the property and the purpose which motivates the occupant's use.[2] And conduct which could constitute possession

---

[2] Thus actual possession was defined in *O'Hara v. Parker*, 27 Or 156, 167, 39 P 1004 (1895) to mean "a foothold upon land accompanied with the

where the occupant has one purpose may not be regarded as possession where his use is motivated by another purpose. The latter observation is particularly germane to the present case. If the title to both the surface and subsurface of the property in question had been in a single ownership, the uses made of the surface by the defendants would be more readily explainable as the assertion of a possessory interest in the property. But here the mining rights and the surface rights had been conveyed out separately. The use of the surface is thus explainable in relation to either a possessory claim or a claim consistent with a permitted surface use incident to the subsurface estate.

Where there is severance between the mining and surface rights, actual possession of the surface by the mining rights owner must be shown by activities beyond the use of the surface for mining purposes. And if the use of the surface is ambiguous so that it is as consistent with a use for mining purposes as it is for denoting a claim of ownership, the former use would be accepted on the principle that the law will prefer an interpretation consistent with lawful rather than unlawful conduct. For this reason, the activities of the defendant in maintaining trails and clearing brush on the claims as well as constructing a road to the tracts do not aid its assertion of possession of the surface.[3]

real and effectual enjoyment of the estate, with the reception of its fruits, its rents, issues, and profits, and is usually evidenced by occupation, by a substantial enclosure, by cultivation, or by appropriate use according to the particular locality and quality of the property." See also, *Hamilton v. Fluornoy*, 44 Or 97, 74 P 483 (1903).

[3]The general rule is that "[u]nless the instrument conveying the interest expressly provides to the contrary, a mineral owner or lessee can make any use of the surface of the land which is reasonably necessary to develop the minerals." Manning, *Mineral Rights Versus Surface Rights*, 2 Nat Res Law 329, 331 (1969). Similarly, the court in *Jenkins v. Depoyster*, 299 Ky 500, 186 SW2d 14, 15 (1945) observed that, "Although not expressly granted, unless the conveyance itself repels the construction, the grantee of the minerals in a tract of land by implication of law acquires the right to occupy and use so much of the surface as may be reasonably necessary for

Defendant points to its "enclosure" of the property in question by the gates at either end of the canyon as evidence of its possession. It is true that in some cases the act of enclosing property symbolizes an intent to possess it.[4] This was not the case here because the claims were accessible for logging purposes by an alternative route over a Forest Service road which runs at a higher elevation. Moreover, since the locked gates serve to protect the persons living at the mining camp and the equipment at other mines owned by defendants, the locked gates are as consistent with the intent only to protect the interest in the mining rights as with an intent to assert a broader claim.

On one occasion Robert Miller, plaintiff's agent, upon checking with the Forest Service as to the use of the lower road, was discouraged from using it when he was told that "there are people up there with rifles and they were shooting and said they were having problems up there." There was no other evidence to show that this protective action on the part of defendants actually occurred or that, if it did, it was related to an assertion of possession of this particular property.

In support of its assertion of a possessory interest in the surface estate, defendant points to the use of timber from the claims for firewood and bridge supports, and in harvesting cedar for shakes and posts for use in the mining camp. The use of the wood for bridge supports can be regarded as incident to the mining operations because it was reasonably necessary to the

the beneficial and profitable working of the mines. * * * The right to construct and operate proper and necessary facilities for transportation is a part of the severed property."

In this case the plaintiff seeks to quiet title to the surface of the land except for rights reserved to another by the deed severing the estate, "to go upon the surface of such claims in prospecting, developing, working the deposits or in subtracting same and uses reasonably incident thereto."

[4] *See, Miller v. Bushnell,* 275 Or 45, 549 P2d 655 (1976); *Norgard v. Busher,* 220 Or 297, 304, 349 P2d 490, 80 ALR2d 1161 (1960).

successful exploitation of the mines.[5] The cedar wood was apparently used in defendant's mining camp. The mining camp was maintained not only in connection with the mining claims on the land in question but also in connection with other land in which defendant had mining interests. Thus, this activity is distinguishable from a use of the surface in order to effectively enjoy the subsurface estate.[6]

However, the occasional use of land for the removal of firewood or the like has been held to be insufficient, standing alone, to establish a possessory interest.[7] Defendant's sporadic use of the land in the present case was limited here and fails to show with the necessary certainty an intent to occupy the land in a possessory sense. The fact that the surface and subsur-

[5]Thus, in *Jasper Land Co. v. Manchester Sawmills,* 209 Ala 446, 96 So 417 (1923) a reservation by the grantor of mining properties of "the usual rights and privileges of mining" was held to include the right to cut timber for mining operations. *See also,* Fn. 3 *supra.*

[6]See, Annot., "Right of Owner of Title to or Interest in Minerals Under One Tract to Use Surface, or Underground Passages in Connection with Mining Other Tract," 83 ALR2d 665, 670 (1962), where the annotator observes that "It may be stated as a rather strict general rule that in the absence of contractual permission, the holder of the minerals underlying a tract of land will not be permitted to use the surface thereof in aid of mining operations on adjacent adjoining or other tracts of land."

[7]Thus, in *Wheeler v. Taylor,* 32 Or 421, 436, 52 P 183, 67 Am St Rep 540 (1898), this court observed that, "It has been held that occasionally cutting and carrying away rails and firewood from land chiefly valuable for timber was not such an open, notorious and continuous occupancy as would give title * * *." *See also, Talbot v. Cook,* 57 Or 535, 112 P 709 (1911). While, strictly speaking, *adverse* possession is not in question here, the same result would obtain where actual possession alone is at issue.

To the same effect are: *Sanchez v. Taylor,* 377 F2d 733, 739 (10th Cir 1967); *Prestwood v. Hunt,* 285 Ala 525, 234 So2d 545 (1970); *Williams v. Davis,* 280 Ala 631, 197 So2d 285, 288 (1967); *Turnipseed v. Moseley,* 248 Ala 340, 27 So2d 483, 170 ALR 882 (1946); *Noland v. Wise,* 259 SW2d 46 (Ky 1953); *Fugate v. Fugate,* 252 Ky 587, 67 SW2d 952 (1934); *Boudreaux v. Olin Industries,* 232 La 405, 94 So2d 417 (1957); *Jacobs v. Southern Advance Bag & Paper,* 228 La 462, 82 So2d 765 (1955); *Conran v. Girvin,* 341 SW2d 75 (Mo 1960); *Kirby Lumber Corp. v. Lindsey,* 455 SW2d 733 (Tex 1970); *Johnson v. Headrick,* 34 Tenn App 283, 237 SW2d 567 (1948). *See also,* Annot., "Grazing of Livestock or Gathering of Natural Crop as Fulfilling Traditional Elements of Adverse Possession," 48 ALR3d 818 (1973).

face was under a separate title renders defendant's conduct as equivocal at best on the issue of actual possession.[8] We hold, therefore, that defendant's evidence of occupancy of the surface for other than mining purposes is not sufficient to sustain its contention that actual possession was established.[9]

The case is reversed and remanded with directions to reinstate plaintiff's complaint.

---

[8] It is generally recognized that in cases of severed ownership of surface and subsurface rights in land that possession of one estate without sufficient activity to place the other owner on notice of an adverse claim, fails to establish any rights in the other property. *Henley v. United States,* 396 F2d 956, 966-67 (Ct. Cl. 1968); *Klamath Land & Cattle Co. v. Roemer,* 12 Cal App3d 613, 91 Cal Rptr 112, 116 (1970); *Ward v. Woods,* 310 SW2d 63, 65 (Ky App 1958); *Ventro v. Clinchfield Coal Corp.,* 199 Va 943, 103 SE2d 254 (1958).

[9] See *Hall v. Smith,* 269 Or 215, 523 P2d 1254 (1974).