Argued and submitted September 22,
reversed and remanded December 1, 1980,
reconsideration denied January 15,
petition for review denied February 4, 1981 (290 Or 449)

ROGELIS,
*Respondent,*

*v.*

PETTIS,
fka Rogelis,
*Appellant.*

(No. 78-1-155, CA 15779)

619 P2d 1339

George J. Gregores, Portland, argued the cause for appellant. With him on the brief was Day, Prohaska & Case, P.C., Portland.

Vernon L. Richards, Sandy, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Plaintiff brought this suit to quiet title. The trial court found for plaintiff and defendant appeals.

The following facts are undisputed: The parties cohabited together in California in 1964 for approximately seven months prior to coming to Oregon to live. In March, 1965, 20 acres of land was conveyed to the parties in the names of "Louis M. Rogelis and Dorothy M. Rogelis, husband and wife." The parties were not then, nor have they ever been, husband and wife. Plaintiff paid for the land from money he had saved before retiring from the Navy. The parties sold 10 of the 20 acres to plaintiff's nephew. The parties purchased a mobile home which they lived in on the property until a home was constructed. Plaintiff did most of the construction on the home, contracting only minor portions out to others. The parties moved into the home in the fall, 1966, and lived together there until January, 1971, when defendant moved out of the home.

In 1975, plaintiff married. In 1977, plaintiff desired to sell the property and asked defendant to sign a quit claim deed, which she refused to do. This litigation then ensued.[1]

The trial court relied on the Supreme Court's decision in *Beal v. Beal,* 282 Or 115, 577 P2d 507 (1978), and our decision in *Rissberger v. Gorton,* 41 Or App 65, 597 P2d 366 *rev den* (1979), for the proposition that "when dealing with the property disputes of a man and a woman who have been living together in a nonmarital domestic relationship, [the courts] should distribute the property based upon the express or implied intent of those parties." 282 Or at 123. The trial court found there was insufficient evidence of any agreement between the parties, either expressed or implied, and declared plaintiff the sole owner. We reverse.

■■    A suit to quiet title is an equitable proceeding and we review *de novo.* ORS 19.125. From our review of the record we find there was an intent on the part of the parties to own the property jointly.

---

[1] The marriage of plaintiff was dissolved in 1979 with wife receiving a lien on the property. The lien is not an issue here.

The facts here are like those in *Brazell v. Meyer,* 42 Or App 179, 184, 600 P2d 460 (1979),[2] in which we said:

"* * * The parties lived together in the residence and, at least at the relevant times, held themselves out as husband and wife. Her use of his last name in taking title must be taken as a manifestation of an intent with respect to that property that they be treated as if married * * *."

In determining the interest of each party in the property we find the facts here to be similar to those in *Beal* and therefore adopt a similar solution. The Supreme Court said:

"Using the rules of cotenancy, when the conveyance is taken in both names the parties would be presumed to share equally, or to share based upon the amount contributed, if the contributions were traceable. *West v. Knowles, supra;* Freeman on Cotenancy 172, § 105 (1886). *See, e.g., Mayo v. Jones,* 8 Wash App 140, 505 P2d 157 (1972); *Huls v. Huls,* 98 Ohio App 509, 130 NE2d 412 (1954); *Williams v. Monzingo et al,* 235 Iowa 434, 16 NW2d 619, 156 ALR 516 (1944). Such rules of cotenancy could also result in requiring a showing of who paid various items, such as taxes, mortgage payments or repairs. 2 Tiffany, Law of Real Property 282, § 461 (1939). The difficulty with the application of the rules of cotenancy is that their mechanical operation does not consider the nature of the relationship of the parties. While this may be appropriate for commercial investments, a mechanistic application of these rules will not often accurately reflect the expectations of the parties." 282 Or at 121-22.

The Supreme Court then discussed the interest of the parties in that case in pooling their incomes in the maintenance of the household—he paid the mortgage and she paid the other household obligations. They had each also contributed to the down payment for the residence. Because defendant there had paid more than plaintiff the

---

[2] The events surrounding the signing of the closing statement and escrow agreement which resulted in defendant's name being on the deed, indicate that the parties at that time were in agreement that she should sign the documents. Defendant testified that plaintiff requested her to sign. Plaintiff testified he did not know defendant would use his last name in signing and that he did not care whether she signed or not, but he added, "I figured one of these days, we would get married, and it would be ours anyway." Plaintiff testified they had never discussed marriage, but when asked, "Why did you allow her name to go on the deed?," he replied, "I figured we'd get married."

court concluded she was entitled to receive credit for that amount. The court also concluded that because a different situation existed after defendant moved out of the residence, the property rights after that date should be determined by the regular rules of cotenancy. The court then remanded the case for the taking of further evidence in order that the court could make a proper distribution.

■■ In applying that reasoning to this case we first note that *Beal* had been decided more than a year before this case was tried. That being so, both plaintiff and defendant should have put on evidence showing the contributions of each to the property, *e.g.,* plaintiff's monetary contribution to the construction of the house and the mortgage payments after the parties separated,[3] and defendant should have shown the fair rental value of the property after the separation. As the record now stands, we know only that plaintiff contributed $5,000 to the original purchase of the property. Because *Beal* was the law when this case was tried, we do not remand for a second opportunity for the parties to present evidence that could have been presented then. Instead, we take the facts on this record and conclude that plaintiff and defendant are cotenants and, as such, have an equal interest in the property, except that plaintiff is to be given credit for the $5,000 he contributed to the purchase of the property.

Reversed and remanded for entry of a decree consistent with this opinion.

---

[3] Although plaintiff made the mortgage payments while the parties lived together we would not, were we attempting to work out the details as in *Beal,* necessarily identify that as a credit to plaintiff because the evidence shows that defendant intended to work when she came to Oregon, and the parties both agreed she was "an experienced farm laborer." It also was plaintiff's desire that she not do so. Likewise, defendant's contribution in performing all the housekeeping tasks, as well as her work on the property itself, would have to be recognized as a significant contribution.