Submitted on record and briefs September 23, reversed and remanded on appeal; affirmed on cross-appeal December 21, 1994, petition for review denied April 25, 1995 (321 Or 94)

Fran E.L. KOHLER
and David E. Kohler,
*Appellants - Cross-Respondents,*

*v.*

Charles W. ALSPAW,
Trustee, Robert Floyd Colyer,
Jeremy Aaron Colyer, A Minor,
Darla Priday, Guardian Ad Litem for
Jeremy Aaron Colyer,
*Respondents - Cross-Appellants,*

*and*

Robert M. SNEE,
*Cross-Respondent.*

(C 900280CV; CA A74475)

887 P2d 832

Fran E.L. Kohler and David E. Kohler filed the briefs *pro sese*.

Margaret H. Leek Leiberan, Neil J. Driscoll and Leiberan & Gazeley filed the briefs for respondents - cross-appellants.

George W. Kelly filed the brief for cross-respondent Robert M. Snee.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiffs, Fran and David Kohler, filed a complaint for "declaratory and equitable relief" requesting the court to quiet title in them to property that they claim through adverse possession. Over the objection of plaintiffs, the trial court granted defendants' request for a jury trial. At trial, and after plaintiffs had put on their case-in-chief, the trial court directed a verdict for defendants. ORCP 60. Plaintiffs appeal, and we reverse.[1]

■ ■ On appeal from a judgment based on a directed verdict, we "view the evidence in the light most favorable to the nonmoving party * * * and extend to that party the benefit of every reasonable inference that may be drawn from the evidence." *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den* ___ US ___, 113 S Ct 1813, 123 L Ed 2d 444 (1993). A directed verdict should be entered only in the exceptional case, where reasonable persons could draw one inference and that inference being favorable to the moving party. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977).

■ Under plaintiffs' theory of the case, they are required to prove the elements of adverse possession by "clear and positive proof." *Scott v. Elliott*, 253 Or 168, 178, 451 P2d 474 (1969). Therefore, we inquire as to whether a reasonable person could find that the facts establishing the elements of adverse possession are *much more* probably true than the facts that weigh against an ultimate finding of adverse possession. *See Willibanks v. Goodwin*, 300 Or 181, 190, 709 P2d 213 (1985).

These are the facts that favor plaintiffs' theory. In December, 1977, Fran Kohler leased a house and property from Edna Hecker. Neither Hecker nor Fran knew at the time they entered into the lease that part of the land being leased actually belonged to defendants. There was nothing observable on the property that would indicate a boundary line between Hecker's lot and defendants' lot that directly

---

[1] Robert Snee was Kohler's trial attorney. Defendants moved for an award of attorney fees against Snee and plaintiffs under ORCP 17 and ORS 20.105. The trial court denied relief as to Snee and David Kohler, but awarded fees against Fran Kohler. That ruling is the subject of the cross-appeal.

adjoined to the east. Based on his belief that defendants' lot was part of what he was leasing, Fran carried out a variety of activities there during the ensuing years.

Those activities included: In 1978, Fran parked a bus halfway over the boundary line. Shortly thereafter, he parked another bus just over the line. Those buses have remained in the same location for more than ten years. Fran also posted no trespassing signs, cleared trails and removed debris from a creek bed and pond. He repaired a small pen in which he kept a goat for a period of time and used an existing outhouse. He eventually replaced the outhouse in 1985 with another out-house. He also expanded the driveway onto defendants' lot and parked various old cars there, some of which remained at the time of trial. Also, he testified that, over the years, he planted several trees and other plants on defendants' lot.

In 1984, Fran and David bought the land that Fran had been leasing from Hecker.[2] All of the parties to the transaction believed that the property being conveyed included defendants' lot. It was not until Fran received the title insurance policy that he discovered that the property he had been using was comprised of two lots, one of which belonged to defendants. Plaintiffs continued to use all of the property. When defendants' representative contacted him in 1989, Fran told him that both lots belonged to him and warned the representative to stay off the property.

The trial court granted the directed verdict in favor of defendants based on two legal conclusions. It first held that ORS 105.620 precluded recovery by plaintiffs. ORS 105.620 is a codification of the common law elements of adverse posses-sion, with an additional requirement that a party claiming adverse possession must have an "honest belief" that the party is the owner of the property. The honest belief must exist throughout the ten-year vesting period. Fran acknowl-edges that, in 1984, he became aware that he did not own the property. However, plaintiffs argue that ORS 105.620 does not prevent them from prevailing on their claim, because ownership of defendants' property had vested in them by 1988, and ORS 105.620 was not enacted until 1989.[3]

---

[2] David Kohler did not move onto the property until 1980.

[3] Oregon Laws 1989, chapter 1069.

■  Originally, section 4 of the 1989 version of ORS 105.620 read:

> "The provisions * * * of this act * * * shall apply to all claims for adverse possession or for the recovery of possession of real property filed after January 1, 1990."

Plaintiffs' claim to quiet title was filed in March of 1990. In 1991, the legislature amended ORS 105.620 while plaintiffs' claim was pending, but before it was heard.[4] Section 4 now reads:

> "The provisions of ORS 105.620 * * * shall apply to all claims for recorded title or for the recovery of possession of real property *for which the interest vested* and for which the claim is filed after January 1, 1990." (Emphasis supplied.)

The effect of the amendment is to limit the application of the statute to any claim that was filed after January 1, 1990, and in which ownership because of adverse possession had vested after that time. Under plaintiffs' theory, their interest vested by 1988. The trial court erred in applying ORS 105.620. *See Markovich v. Chambers*, 122 Or App 503, 506, 857 P2d 906 (1993).

■  As an alternative basis, the trial court concluded that a directed verdict should be granted because plaintiffs had not presented evidence from which the jury could find the common law elements of adverse possession. At common law, a party could obtain title through adverse possession by presenting evidence of actual possession under claim of right or color of title that has been open, notorious, exclusive, hostile, continuous, and for the statutory period of ten years. ORS 12.050; *Lee v. Hansen*, 282 Or 371, 375, 578 P2d 784 (1978). A person who enters and occupies property not embraced in his ownership for the statutory period can aquire title thereto under the doctrine of adverse possession, even though the entry and possession of the land was based on the mistaken belief that the property was his. *Anderson v. Richards*, 100 Or 641, 649, 198 P 570 (1921). Here, plaintiffs and Hecker believed that Hecker owned defendants' lot, and plaintiffs used it as their own. Besides other activities, plaintiffs parked their vehicles, kept livestock and maintained an outhouse on the disputed property. We conclude that plaintiffs' evidence is

---

[4] Oregon Laws 1991, chapter 109, section 3.

the kind of evidence that could persuade a reasonable fact finder that the elements of adverse possession have been established by clear and positive proof.

Defendants argue that a directed verdict was proper because plaintiffs purchased the property in 1984, and ten years did not lapse from that time. Defendants contend that plaintiffs cannot tack the period of time that Fran was leasing the property to the time that plaintiffs have owned the property, because during the time that Fran was leasing, he was holding title in subordination to Hecker.

■ Hecker testified that she believed she owned all of the property that she was leasing to Fran. A trier of fact could find that she had no conscious doubt about her ownership of both lots. In that event, Fran's possession of the disputed property as a tenant could inure to Hecker's benefit for purposes of adverse possession. *See Quinn v. Willamette Pulp & Paper Co.*, 62 Or 549, 553, 126 P 1 (1912). Thereafter, when Fran and David purchased the property from Hecker, they could be entitled to tack Hecker's adverse possession to their subsequent possession.[5] *See Evans v. Hogue*, 296 Or 745, 755, 681 P2d 1133 (1984). In the light of the evidence that is most favorable to plaintiffs, we conclude that the trial court erred when it granted a directed verdict to defendants. The judgment against plaintiffs, including the judgment against Fran Kohler for attorney fees, must be reversed.

Plaintiffs also assign as error the trial court's granting of a jury trial at defendants' request. Whether defendants are entitled to a jury trial on plaintiffs' claim depends on the nature of the proceeding in which it is raised and who is in possession of the disputed property.

■ Plaintiffs' complaint seeks to quiet title as well as declaratory relief.[6] A claim of adverse possession may be pled

---

[5] Defendants cite *Sertic v. Roberts*, 171 Or 121, 133, 136 P2d 248 (1943), and argue that a tenant may not adversely possess property in favor of a landlord without the landlord's direction, knowledge or consent. *Sertic* is distinguishable from the facts of this case, because here the landlord testified that she believed she owned the land she was leasing and told the tenant so. In *Sertic*, the landlord never believed he owned the land that the tenant was adversely possessing and never knew that the tenant was adversely possessing the land in his favor. 171 Or at 132.

[6] It is unclear whether plaintiffs' claim is made under ORS chapter 28, which authorizes courts to declare the "rights, status, and other legal relations" of parties,

in what had previously been characterized as both equitable and legal proceedings. *See* ORCP 2.[7] Declaratory judgment proceedings "may be equitable or legal in character depending upon the nature of the proceeding." *See Port of Portland v. Maxwell*, 9 Or App 105, 111, 496 P2d 23 (1972). In *Yaquina Bay Timber v. Shiny Rock Mining*, 276 Or 779, 781 n 1, 556 P2d 672 (1976), the court said:

> "Under the Oregon Constitution, Art. I, § 17 and Amended Article VII, § 3, the right to a trial by jury exists in those classes of cases where a jury trial was customary at the time of the adoption of the constitution. *Moore Mill & Lbr. Co. v. Foster*, 216 Or 204, 224, 336 P2d 39, 337 P2d 810 (1959). Such a right, then, exists for an action at law in ejectment but not for an equitable suit to quiet title. *Oliver v. Burg*, 154 Or 1, 20, 58 P2d 245 (1936). The choice between these forms of action for a party seeking to determine ownership of real property depends upon who is in possession of the land. Under ORS 105.605, a party out of possession cannot maintain a suit to quiet title against a defendant in actual possession and must proceed by ejectment."

Because plaintiffs are in possession of the disputed property and the substance of their claim is to quiet title, defendants are not entitled to a jury on retrial. *See Rogelis v. Pettis*, 49 Or App 537, 539, 619 P2d 1339 (1980), *rev den* 290 Or 449 (1981).

In the light of our holdings, plaintiffs' remaining assignments of error, as well as defendants' cross-appeal and arguments either do not require discussion or are moot.

Reversed and remanded on appeal; affirmed on cross-appeal.

---

or under ORS 105.605. The latter provides, in part:

> "Any person claiming an interest or estate in real property not in the actual possession of another may maintain a suit in equity against another who claims an adverse interest or estate therein for the purpose of determining such conflicting or adverse claims, interests or estates."

[7] ORCP 2 provides:

> "There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."